SEEFELDT, Respondent, v. KESKE, Appellant.

*October 2—October 31, 1961.*

For the appellant the cause was submitted on the brief of *Lueck & Skupniewitz* of Beaver Dam, and for the respondent on the brief of *Swan, Strub & Woodworth* of Beaver Dam.

CURRIE, J. Defendant lessor contends on this appeal that it is well established by the decisions of this court that an option granted to a lessee to renew a lease, as distinguished from an option to extend, requires the execution of a new lease if the option is exercised. Since no new lease had been executed, it is argued that no option to purchase existed when plaintiff lessee attempted to exercise the option in the summer of 1960.

Some states do not distinguish between options to extend and options to renew a lease, and construe both as not requiring the execution of a new lease upon exercise of the option by the lessee. 3 Thompson, Real Property (1959 Replacement), p. 431, sec. 1120, and cases there cited in footnote 58; Anno. 172 A. L. R. 1205, 1230. However, Wisconsin is one of the states which does distinguish between an option to extend and one to renew. Thus, a new

lease agreement is required in order to validly exercise an option of the latter category. *Kollock v. Scribner* (1897), 98 Wis. 104, 111, 73 N. W. 776; *Fergen v. Lyons* (1916), 162 Wis. 131, 133, 155 N. W. 935. On the other hand, no new lease is required where the option to be exercised is one merely to extend. *Nelson v. Nelson* (1918), 168 Wis. 115, 118, 169 N. W. 278; *Raffensperger v. Van Kooy* (1952), 260 Wis. 589, 592, 51 N. W. (2d) 488; *Milwaukee Hotel Wisconsin Co. v. Aldrich* (1953), 265 Wis. 402, 406, 62 N. W. (2d) 14.

The briefs of both counsel cite and discuss *Orton v. Noonan* (1870), 27 Wis. 272. The option there involved was one to extend, not renew. At that time this court consisted of three justices, and but only two of the three participated in the decision. Mr. Chief Justice DIXON took the position that no new lease need be executed when such an option is exercised. Mr. Justice COLE, in a separate opinion, held that a new lease was required in such a situation. The case was finally decided on another point, but because of the equal division of the court on this issue the decision is only of historical interest. It is not a precedent which advances the interest of either party on this appeal.[1] The view of Mr. Chief Justice DIXON, however, was the one ultimately adopted in the later decisions of the court cited above.

The argument advanced by defendant assumes that the option in the instant lease was one to renew and not one to

[1] It is interesting to note that Mr. Justice MARSHALL, in *Kollock v. Scribner, supra,* at page 111, erroneously assumed that the opinion of Mr. Justice COLE in *Orton v. Noonan, supra,* expressed the holding of the court. This is because he states that it "was held" in the latter case that an agreement to extend has the effect of requiring a new lease. It is most unusual to discover such inaccuracy on the part of this justice who possessed great talent for correctly analyzing and interpreting the past decisions of this and other courts.

extend. However, we deem the wording of this option to be ambiguous because it first states, "the said lessee shall, at her option, have the right and privilege to continue this lease for a period of three years," and then in the same sentence speaks of "the option to renew." The words "continue this lease" are only consistent with an option to extend, not one to renew. This is because an option to extend is frequently defined in terms of "continuance." Thus, the author of the annotation in 172 A. L. R. 1205, 1219, states:

"Courts which, in considering the necessity of a new lease contract when an option is given the lessee for an additional term, recognize a distinction between 'renewal' provisions and 'extension' generally are agreed that the latter form of option does not require or contemplate execution of a new lease but simply a *continuance of the original one* for a further time upon compliance with the conditions for its exercise; . . ." (Emphasis supplied.)

In similar vein is Mr. Chief Justice Dixon's remark in *Orton v. Noonan, supra,* at page 282:

"The verb *to extend* implies far less in this connection than the verb *to renew,* found in other cases. In fact it has nothing of the same strength and significance. *To extend* is to draw forth or stretch; to prolong; to protract; *to continue.*" (Emphasis supplied as to last two words.)

The factors to be considered in resolving the ambiguity in the instant lease, with respect to whether the option is one to extend or to renew, are set forth in 3 Thompson, Real Property (1959 Replacement), p. 433, sec. 1120, as follows:

"Whether the covenant is for renewal or extension depends upon the intention of the parties as shown from the entire lease or from their subsequent conduct before the controversy arose."

An examination of the other provisions of the lease affords no assistance, but the practical interpretation by the

parties, as evidenced by their subsequent conduct, does tend to provide an answer. Such subsequent conduct consists of plaintiff's acts in continuing to pay rent after giving the notice of July 25, 1957, of her election "to continue and renew" the lease, and lessor's acceptance of such rent payments during the ensuing three years.

We deem *Ackerman v. Loforese* (1930), 111 Conn. 700, 151 Atl. 159,[2] to be directly in point on the question of practical interpretation by the parties. In that case the original lease was for a five-year term commencing September 15, 1919, and contained this provision (p. 701) : " 'It is further agreed that this lease may be renewed at the option of the party of the second part [the lessee] for a further period of five years after the expiration hereof, upon the same terms and conditions as in the lease contained.' " The lease also granted the lessee an option to purchase the demised premises for $26,500 "at any time during the term of this lease." Shortly before the lease was to expire, lessee notified lessor Roina as follows (p. 702) : " 'I hereby notify you that I renew said lease for a further period of five years upon the same terms and conditions as in the lease contained. Should you desire a renewal lease executed in accordance with the option in said lease, I shall be prepared to sign the same, otherwise this letter may be considered by you as obligating me to such renewal.' " No new lease was executed but lessee continued to pay rent to Roina, and later to Roina's grantees, who accepted the same. Then, on or about September 12, 1929, lessee gave notice to Roina's grantees of his election to exercise the option to purchase. These grantees refused to convey and an action for specific performance was instituted against them by the lessee. Defendants contended that execution of a new lease containing an option to purchase was required after the expiration of

[2] This case is the subject of a note in 26 Illinois Law Review (1931), 445.

the original five-year term in order for plaintiff lessee to maintain the action. The Connecticut court disposed of this argument by declaring (111 Conn. 706):

> "Roina's acquiescence and conduct and that of his successors was consistent only with a construction that the word 'renewed' was used in the lease as synonymous with 'extended' or with an admission that the exercise by the plaintiff of his election to renew was such an affirmative act as to create the renewal. *Andrews v. Marshall Creamery Co., supra* [(1902), 118 Iowa 595, 92 N. W. 706]. Having led the lessee into relying upon that construction as the correct one, or that his act was sufficient to effectuate a renewal, they may not now be heard to assert the contrary."

Kentucky is one of the states which, like Connecticut and Wisconsin, recognizes a distinction between an option to extend and one to renew. In *Klein v. Auto Parcel Delivery Co.* (1921), 192 Ky. 583, 234 S. W. 213, a five-year lease granted the lessee an option "to renew" for a similar period at an increased rental for the last four years of the renewal term, but contained no provision requiring the lessee to give notice in order to exercise such option. Lessee held over after the expiration of the original term and continued to pay rent and lessor accepted such rent payments; these payments, after the first year following the expiration of the original term, were in the increased amount specified in the lease. Twelve days before the expiration of the fourth year of the second five-year period, lessor served a notice to vacate on lessee and later commenced a forcible detainer proceeding. The Kentucky court held that the continued occupancy by lessee and the acceptance by lessor of the stipulated rent were sufficient to warrant an interpretation that the parties intended only an extension of the lease, even though the word "renew" was employed in stating the option.

The instant case is a stronger one for applying the rationale of the holdings in *Ackerman v. Loforese, supra,* and *Klein v. Auto Parcel Delivery Co., supra,* because here a patent ambiguity exists as a result of the use of the words "to continue this lease." It is our conclusion that the allegations of the complaint are sufficient to constitute a practical interpretation of the option by the parties through their conduct. This practical interpretation establishes such option as one for extension of the existing lease, and not one calling for the execution of a new lease. Therefore, the option to purchase was available to be exercised by plaintiff during the extended term. *Raffensperger v. Van Kooy, supra.*

*By the Court.*—Order modified so as to grant defendant the privilege of pleading over within a period of twenty days from the remittitur of the record from this court to the circuit court and, as so modified, the order is affirmed.