In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3946

Thomas P. Krukowski and Ermina A. Krukowski,

Petitioners-Appellants,

v.

Commissioner of Internal Revenue,

Respondent-Appellee.

Appeal from the United States Tax Court.
No. 7765-98--David Laro, Judge.

Argued May 17, 2001--Decided February 5, 2002

   Before Harlington Wood, Jr., Kanne, and
Rovner, Circuit Judges.

   Kanne, Circuit Judge.   In 1994, the
Commissioner of the Internal Revenue
Service issued a deficiency notice to
Thomas and Ermina Krukowski. The notice
informed the Krukowskis that they had
misclassified certain rental income as
passive income on their 1994 federal
income tax return. The Krukowskis
challenged the deficiency charge, but the
Tax Court granted summary judgment in
favor of the Commissioner. On appeal, the
Krukowskis argue (1) that they are
entitled to characterize the particular
rental activity as a passive activity,
(2) that the Secretary of the Treasury's
regulation recharacterizing the rental
activity as a nonpassive activity is
invalid, and finally, (3) that this
particular rental activity should be
treated as a single activity with their
other rental activity, and this single
activity should be characterized as a
passive activity. For the reasons stated
herein, we affirm.

I.  History

   The Krukowskis own two buildings in
Milwaukee, Wisconsin. They lease these
buildings and earn rental income from the
leases. Housed in one of the buildings is
S.R. & F.C., Inc., a health club wholly
owned by Thomas Krukowski ("Club

Building"). The other building houses Krukowski & Costello, S.C., a law firm ("Law Firm Building"). Thomas Krukowski is an attorney with Krukowski & Costello, S.C., and in 1994, served as its president and sole shareholder. Additionally, he received all of his earned income that year from his law practice with Krukowski & Costello, S.C.

On March 1, 1987, Thomas Krukowski and Krukowski & Costello, S.C., executed a five-year lease for the Law Firm Building. The lease contained a renewal clause that provided:

Option to Renew

Lessor grants to Lessee three (3) consecutive options to renew this Lease, each for a term of three (3) years, at a rental to be mutually agreed to by Lessor and Lessee prior to the commencement of a renewal term with respect to that renewal term, with all other terms and conditions of the renewal lease to be the same as those herein. To exercise this option, Lessee must:

(1) give Lessor written notice of the intention to do so at least 60 days before initial term expires, and

(2) agree with Lessor on rental for renewal period at least 30 days before initial term expires.

In Lessor's sole discretion, failure to comply with either (1) or (2) above shall cause the option to renew to become null and void.

On December 27, 1991, Thomas Krukowski and Krukowski & Costello, S.C. signed a renewal for the Law Firm Building. The renewal provided that "[t]he term of the Lease will be extended from March 1, 1992 until February 28, 1995 and all other terms and conditions of the Lease shall remain the same including the monthly rent of $17,500."

On their 1994 federal income tax return, the Krukowskis reported a passive income of $175,149 from the Law Firm Building and a passive loss of $69,100 from the Club Building. The Krukowskis offset their gain from the Law Firm Building with the loss from the Club Building. The Commissioner of the Internal Revenue

Service issued a notice of deficiency to the Krukowskis on March 11, 1998. TheCommissioner determined that the net income from the Law Firm Building was nonpassive income because the property was rented to a corporation in which Thomas Krukowski "materially participate[d]." For this reason, the Commissioner found that the Krukowskis should not have used the passive loss from the Club Building to offset the nonpassive income from the Law Firm Building.

As part of the Tax Reform Act of 1986, Internal Revenue Code sec. 469 was enacted. See I.R.C. sec. 469. Section 469 was intended to limit the financial incentive to structure traditional tax shelters. Prior to this enactment, taxpayers could use passive activity losses to offset nonpassive activity income, thereby sheltering active income from taxation. Now, however, sec. 469 prohibits the deduction of passive activity losses, except insofar as the losses are used to offset passive activity income. Section 469(c)(1) defines a passive activity as "any activity (A) which involves the conduct of any trade or business, and (B) in which the taxpayer does not materially participate." I.R.C. sec. 469(c)(1).

The Krukowskis do not dispute the Commissioner's finding that Thomas Krukowski materially participated in Krukowski & Costello, S.C. Rather, in support of their contention that the income for the Law Firm Building should be treated as passive, the Krukowskis assert three arguments on appeal. First, they argue that they are entitled to transitional relief under Treasury Regulation sec. 1.469-11(c)(1)(ii) and are allowed to characterize the income from the Law Firm Building as passive because it arises from a written binding contract entered into prior to February 19, 1988. See Treas. Reg. sec. 1.469-11(c)(1)(ii). Second, they argue that because sec.sec. 469(c)(2) and (4) state that "any rental activity" is to be treated as a "passive activity," the generalized power of the Secretary to recharacterize some passive activities as nonpassive under sec. 469(l) does not include the power to effectively repeal sec.sec. 469(c)(2) and (4). Therefore, they argue that the Secretary's

regulation that recharacterizes the rental income from the Law Firm Building as nonpassive is invalid. Finally, the Krukowskis argue that, pursuant to Treasury Regulation sec. 1.469-4(c)(1), the rental activities of both buildings should be treated as a single, passive activity.

## II. Analysis

Each of the Krukowskis' arguments on appeal presents a question of law. These questions of law, we review de novo. See Connor v. Commissioner, 218 F.3d 733, 736 (7th Cir. 2000); L & C Springs Assocs. v. Commissioner, 188 F.3d 866, 869 (7th Cir. 1999).

## A. Written Binding Contract Exception

The Krukowskis contend that the 1987 Law Firm Building lease was extended by the agreement signed in 1991. Because the 1991 agreement is merely an extension of the 1987 lease, the Krukowskis argue that they are entitled to transitional relief under Treasury Regulation sec. 1.469-11(c)(1)(ii). Section 1.469-11(c)(1)(ii) allows taxpayers to characterize leasing agreements as passive when the agreement was a "written binding contract entered into before February 19, 1988." See Treas. Reg. sec. 1.469-11(c)(1)(ii). We disagree with the Krukowskis' characterization of the 1991 agreement. We conclude that in 1991, when the Krukowskis exercised the renewal option contained in the 1987 lease, they entered into a new leasing agreement, and did not merely extend the original 1987 lease.

In addition to being entered into prior to February 19, 1988, "[t]o qualify for exemption from passive activity characterization [under sec. 1.469-11(c)(1)(ii)], a lease must be in writing and it must be binding. At a minimum, for a lease to be binding on a party, it must be enforceable under applicable state law." Connor, 218 F.3d at 740. Because the lease at issue involves Wisconsin property, we apply Wisconsin law. See id. Under Wisconsin law, a new lease agreement is required in order to validly exercise an option to renew a lease agreement. See Seefeldt v. Keske, 111 N.W.2d 574, 575 (Wis. 1961). Conversely, a new lease agreement is not required where the option being exercised merely

extends the original lease. See Connor, 218 F.3d at 740; Seefeldt, 111 N.W.2d at 576.

The 1987 lease was a five-year lease, expiring in 1992. The renewal option in the 1987 lease provided the lessee with "three (3) consecutive options to renew [the 1987] Lease, each for a term of three (3) years, at a rental to be mutually agreed to by Lessor and Lessee prior to the commencement of a renewal term with respect to that renewal term." (Emphasis added). This provision is unambiguous and is plainly referred to by the parties as an option to renew. Furthermore, since both parties had to "mutually agree" on a new rental price, the 1991 agreement was a new agreement and not merely an extension of the original agreement. See St. Regis Apartment Corp. v. Sweitzer, 145 N.W.2d 711, 713-14 (Wis. 1966) (finding that "the period of the lease [did] not include the period of time covered by the automatic renewal clause" because both the lessee and the lessor could prevent renewal by giving notice); Milwaukee Hotel Wis. Co. v. Aldrich, 62 N.W.2d 14, 16 (Wis. 1953) ("The rule of law that a lease for three years and three additional years if the lessee chooses to continue it, is a lease of itself for six years.") (emphasis added); Sheppard v. Rosenkrans, 85 N.W. 199, 200 (Wis. 1901) (explaining that "[t]his is so because, if the tenant makes the election, he still holds under the original demise; there is no further act to be done by the lessor.") (quotation omitted). Here, the lessee did not possess a unilateral right to bind the lessor to an extension of the original lease. Cf. Milwaukee Hotel Wis. Co., 62 N.W.2d at 16. Rather, the parties had to mutually agree on the rental amount before the lease would be renewed. The fact that the parties chose to maintain the same rental price does not alter the fact that the parties were free to agree to a different amount. Thus, in 1994, the Krukowskis received rental income from the Law Firm Building pursuant to a lease agreement entered into in 1991. Consequently, the Krukowskis are not entitled to transitional relief under Treasury Regulation sec. 1.469-11(c)(1)(ii).

B.  Treasury Regulation sec. 1.469-2(f)(6)

Second, the Krukowskis note that sec.sec. 469(c)(2) and (4) state that "any rental activity" is to be treated as a "passive activity." Thus, they argue that the generalized power of the Secretary to recharacterize some passive activities as nonpassive does not include the power to recharacterize rental activity as nonpassive. Therefore, they assert that Treasury Regulation sec. 1.469-2(f)(6), which recharacterizes the rental income from the Law Firm Building as nonpassive, is invalid. Treasury Regulation sec. 1.469-2(f)(6) provides in pertinent part that:

An amount of the taxpayer's gross rental activity income for the taxable year from an item of property equal to the net rental activity income for the year from that item of property is treated as not from a passive activity if the property . . . [i]s rented for use in a trade or business activity . . . in which the taxpayer materially participates . . . for the taxable year . . . .

(the "Self-Rental Rule"). We find this argument to be unpersuasive, as have the First and Fifth Circuits. See Sidell v. Commissioner, 225 F.3d 103, 107 (1st Cir. 2000); Fransen v. United States, 191 F.3d 599, 601 (5th Cir. 1999).

Section 496(l) authorizes the Secretary to "prescribe such regulations as may be necessary or appropriate to carry out provisions of [Section 469], including regulations which specify what constitutes an activity, material participation, or active participation" and regulations "requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity." I.R.C. sec. 469(l) (emphasis added). Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), this legislative regulation should be upheld unless it is "arbitrary, capricious, or manifestly contrary to statute." "[I]f the plain meaning of the text of the statute . . . supports . . . the regulation, the inquiry ends." See United States v. Dierckman, 201 F.3d 915, 923 (7th Cir. 2000) (quotation omitted).

Section 469(l) is a broad grant of

authority. See Sidell, 225 F.3d at 107. The plain language of sec. 469(l) clearly states that the Secretary can treat "other passive activity" as nonpassive. I.R.C. sec. 469(l); see also Sidell, 225 F.3d at 107; Fransen, 191 F.3d at 600-01. Furthermore, the regulation comports with Congress's goal of eliminating tax shelters. See Sidell, 225 F.3d at 107. In fact, this type of regulation was specifically anticipated by Congress. The House Conference Report states:

The conferees intend that this authority be exercised to protect the underlying purpose of the passive loss provision, i.e., preventing the sheltering of positive income sources through the use of tax losses derived from passive business activities . . . . Examples of where the exercise of such authority may . . . be appropriate include the following . . . (2) related property leases or sub-leases, with respect to property used in a business activity, that have the effect of reducing active business income and creating passive income . . . .

(Emphasis added). See H.R. Rep. No. 99-841, at 147 (1986), reprinted in 1986 U.S.S.C.A.N. 4075, 4235; see also Sidell, 225 F.3d at 107-08. Because we find that the Self-Rental Rule is within the Secretary's authority to enact and that it furthers Congress's goal of eliminating tax shelters, we reject the Krukowskis' challenge to the rule's validity.

The Krukowskis also argue that sec. 469(l) unconstitutionally delegates legislative power to the Secretary. We do not agree. In Whitman v. American Trucking Associations, 531 U.S. 457, 458, 121 S. Ct. 903, 149 L. Ed. 2d 1 (2001), the Supreme Court reconfirmed that a delegation is constitutional so long as Congress provides "an intelligible principle" to which the Secretary is directed to conform. In Whitman, the "intelligible principle" directed the EPA to set ambient air quality standards at a level "requisite to protect the public health." Id. at 472-73. Similarly, the Secretary is directed to "prescribe such regulations as may be necessary or appropriate to carry out provisions" of Section 469, including regulations that "specify what constitutes an activity,

material participation, or active participation" and regulations "requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity." I.R.C. sec. 469(l). We find the principle in this case to be at least as intelligible as the principle recently upheld in Whitman, and therefore, it is a constitutional delegation.

## C.  Single Activity Treatment

Finally, the Krukowskis argue that, pursuant to Treasury Regulation sec. 1.469-4(c)(1), the rental of both buildings should be treated as a single activity. "To make an election, a taxpayer must clearly notify the Commissioner of the taxpayer's intent to do so." See Kosonen v. Commissioner, T.C. Memo 2000-107 (2000). Because the Krukowskis did not elect to treat the rental activities as a single activity on their 1994 Income Tax Return, they cannot now claim that the activities should be grouped as a single activity for purposes of this dispute. See id.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the tax court's decision dismissing the Krukowski's claims.