T.C. Summary Opinion 2002-150


UNITED STATES TAX COURT


KARL AND BIRGIT JAHINA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13483-00S.             Filed November 21, 2002.


Birgit Jahina, pro se.

<u>Igor S. Drabkin</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]     Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.

Respondent determined deficiencies in petitioners' Federal income taxes of $19,336 and $26,084, respectively, for 1996 and 1997 and the accuracy-related penalty under section 6662(a) for 1997 in the amount of $5,216.80. At trial, petitioners conceded a charitable contributions adjustment for the year 1996. The issues for decision are: (1) Whether the passive loss rules of section 469 preclude petitioners from deducting real estate rental losses of $128,168 for 1996 and $95,553 for 1997, and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1997.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made part hereof. Petitioners' legal residence at the time the petition was filed was Pasadena, California.

Petitioners Karl (Mr. Jahina) and Birgit Jahina (Mrs. Jahina) were married during the years at issue. They owned real estate rental property consisting of five apartment buildings and three single-family condominiums during the years at issue. These properties are collectively referred to as the rental properties. The apartment buildings included the Hermitage Property, with 14 units; Coldwater Property, 19 units; Santa Anita Property, 22 units; Moorpark Property, 29 units; and Buffalo Property, 25 units. All of these properties were located in the Los Angeles area.

Mr. Jahina has a Ph.D. in engineering. During all of 1996 and 1997, Mr. Jahina was employed full time as a structural engineer for the Parsons Corp. He did not participate in the real estate activities.

Mrs. Jahina's background was in accounting. She had an undergraduate degree in English and an M.B.A. degree. She had 6 years' experience working for the accounting firms Deloitte and Touche and Sing Young. Following her accounting firm experiences, Mrs. Jahina worked in banking. She was assistant treasurer of the First Interstate Bank in California. During all of 1996 and until August 1997, Mrs. Jahina was employed full time as the controller for ColorGraphics, Inc. After leaving ColorGraphics, she took 6 weeks off, then worked part time for the accounting firm Deloitte and Touche for the remainder of 1997. Mrs. Jahina also worked for another employer, Continental Graphics, during 1997.

Mrs. Jahina's standard work expectation at ColorGraphics was 1,800 hours per year. This was not a minimum requirement but a standard figure. She was a salaried employee. Her actual hours of work there were not documented by her employer, and she did not keep track of them.

In addition to working in her full- and part-time jobs, Mrs. Jahina was actively engaged in managing petitioners' rental properties. She often worked in the very early morning hours,

prior to her salaried employment, on financial statements, tenant correspondence, and paperwork related to the rental properties. She personally obtained credit checks of potential renters. She placed ads in local newspapers to fill vacancies. She reconciled the gross rents every month, determined who was delinquent, and delivered warning notices. When necessary, she filed eviction summonses and complaints and handled the court appearances. She visited the properties regularly. She tracked and supervised the repairs performed at each property, maintaining detailed records. She monitored, in her words:

> every phase of the business. The costs, the revenues, what the neighbors are doing, how much they are charging. How much the various plumbers charge, how much the roofers charge, everything.

Mrs. Jahina performed some of her work managing the rental properties from her job at ColorGraphics through the use of the telephone.

In managing their rental properties, petitioners also utilized resident property managers for the Coldwater, Santa Anita, Moorpark, and Buffalo properties as was required under local law. These managers received free rent as their sole compensation. They were not permitted to work more than 10 hours per week. The resident managers received maintenance complaints, arranged for emergency repairs, showed vacant apartments to

prospective tenants, received rental applications, collected rent checks from tenants, and issued receipts for rental payments. The managers forwarded rental applications and rent checks to Mrs. Jahina, who made all the decisions relative thereto.

In 1996, the rental properties generated approximately $767,000 in earnings before depreciation and amortization of $128,000.  In 1997, the rental properties generated approximately $811,000 before depreciation and amortization of $153,000.  These earnings represented gross profit margins of 17 percent and 19 percent, respectively, for 1996 and 1997.  Mrs. Jahina credited her hands-on management for the financial results.  She described the rental property activity as a "healthy" and "well run" business.  In mid-2000, Mrs. Jahina resigned her outside employment and thereafter devoted herself to the full-time management of the subject rental properties.

During the years at issue, Mrs. Jahina maintained a desk calendar.  On the calendar she noted her activities with respect to the rental properties.  She kept the calendar "because the regulations asked me to."  On the calendar, Mrs. Jahina did not go into great detail about her activities.  However, her notations generally suggest what she did and how much time she spent with respect to the rental properties daily or weekly.  She also maintained telephone records for the periods in question, which indicate telephone calls made and received with regularity

relating to the rental properties. Such calls were placed both from petitioners' home and from her place of employment. Mrs. Jahina also maintained a variety of other records in conducting the rental property activities.

When petitioners were audited by respondent, Mrs. Jahina prepared summaries of her activities for the revenue agent. She prepared the summaries based on her calendars, phone records, correspondence, bills, and other records. The summaries suggest that Mrs. Jahina spent 2,591 hours in 1996 and 2,639 hours in 1997 on the rental properties. However, the hours indicated on the summaries exceeded the hours shown on Mrs. Jahina's contemporaneous calendars. Mrs. Jahina admitted at trial that she prepared the summaries hurriedly for purposes of the audit, using a computer program that would not charge less than 1 hour for any entry. She admitted that the summaries overstated the hours devoted to the real estate properties. However, petitioners maintain that she devoted well in excess of 1,800 hours annually to the rental activities; i.e., more time than she spent working for her employers.[2]

---

[2] When Mrs. Jahina prepared the summaries, she felt frustrated that the revenue agent had not fully credited her time spent working on the rental properties, despite her attempts to cooperate by presenting phone and other business records. Mrs. Jahina objected that the revenue agent only counted the actual minutes of phone time listed on the records. Mrs. Jahina maintained that the agent should have credited her with a span of
(continued...)

Petitioners filed their 1996 and 1997 Federal income tax returns timely. On the 1996 return, Mr. Jahina's occupation was listed as "engineer". Mrs. Jahina's occupation was listed as "controller". On the 1997 return, Mr. Jahina's occupation was again listed as "engineer". Mrs. Jahina's occupation was listed as "accountant". Petitioners included Schedule E, Supplemental Income and Loss statement, with their returns for both years. They completed line 42, Reconciliation for Real Estate Professionals, on the Schedule E. They aggregated their real estate income and losses and, in each year, attached breakdowns of income and expenses by property. They reported net losses of $128,167 in 1996 and $95,533 in 1997.

For 1996, petitioners did not include with their original return or otherwise file an election to treat their rental properties as one rental activity. Mrs. Jahina claims to have provided an election form to the revenue agent later. For 1997, petitioners claim to have filed the election with their original return; however, no such election was attached to the 1997 return. Neither claimed election was offered into evidence at trial.

_____

[2](...continued)
time representing each session of desk work, which would have included both the actual phone time and the intervening time spent preparing for and following up on the phone calls, toward her participation in the rental property activity.

The first issue is whether the passive loss rules under section 469 preclude petitioners from deducting real estate rental losses in the amounts of $128,168 for 1996 and $95,553 for 1997. The specific issue is whether Mrs. Jahina qualifies as a real estate professional under section 469(c)(7).[3]

Petitioners contend that they are entitled to deduct their losses from their real estate rental properties because Mrs. Jahina was a real estate professional under section 469(c)(7), and that petitioners' rental properties were a trade or business in which they materially participated. Respondent maintains that the real estate rental activities generating the net losses were per se passive activities under section 469(c)(2) because Mrs. Jahina did not establish that she was a real estate professional pursuant to section 469(c)(7). Respondent further maintains that petitioners did not elect to treat the rental properties as one activity under section 469(c)(7)(A), and, therefore, Mrs. Jahina must qualify as a real estate professional with respect to each

---

[3] Sec. 7491, in certain instances, places the burden of proof on respondent with respect to examinations of returns commencing after July 22, 1998. There is no evidence in the record regarding the date the examination of petitioners' returns commenced. Moreover, petitioners do not contend that the examination of their return commenced after July 22, 1998, or that sec. 7491 is applicable in this case. Even if sec. 7491 is applicable, the Court decides this case without regard to the burden of proof.

property.  Petitioners contend that they filed such an election for 1997.

Section 469 generally disallows for the taxable year any passive activity loss.  Sec. 469(a).  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).  However, under section 469(c)(7), the rental activities of a taxpayer in the real property business, i.e., a real estate professional, are not per se passive activities under section 469(c)(2).  Rather, the rental activities of a real estate professional are treated as a trade or business and subject to the material participation requirements of section 469(c)(1).  Sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer qualifies as a real estate professional and therefore is not engaged in a per se passive activity pursuant to section 469(c)(2), if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). In the case of a joint return, the above requirements for qualification as a real estate professional are satisfied if and only if either spouse separately satisfies these requirements. Sec. 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not a per se passive activity under section 469(c)(2).

The applicable temporary regulation addresses how a taxpayer may establish the amount of time spent on rental property activities. To wit, that regulation provides:

(4) Methods of proof. The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). This Court has acknowledged that the passive loss regulations are somewhat ambivalent as to the records to be maintained by taxpayers. Goshorn v. Commissioner,

T.C. Memo. 1993-578. Nevertheless, the regulations do not allow a post-event "ballpark guesstimate". Id.

The general rule is that each interest of the taxpayer in rental real estate is treated as a separate activity. Sec. 469(c)(7)(A)(ii). However, a taxpayer in the real property business may elect to treat all interests in rental real estate as one activity. Sec. 469(c)(7)(A). The election to treat all interests in rental real estate as a single rental real estate activity is made:

> by filing a statement with the taxpayer's original income tax return for the taxable year. This statement must contain a declaration that the taxpayer is a qualifying taxpayer for the taxable year and is making the election pursuant to section 469(c)(7)(A). * * *

Sec. 1.469-9(g)(3), Income Tax Regs. Such an election is binding for the taxable year in which it is made and for all future years in which the taxpayer qualifies as a real estate professional, even if there are intervening years in which the taxpayer is not a qualifying taxpayer. Sec. 1.469-9(g)(1), Income Tax Regs. The election may be made in any year in which the taxpayer is a qualifying taxpayer, and the failure to make the election in one year does not preclude the taxpayer from making the election in a subsequent year. Id.

On this record, the Court holds that petitioners did not file a valid election to treat their rental properties as one

activity in either 1996 or 1997. "To make an election, a taxpayer must clearly notify the Commissioner of the taxpayer's intent to do so." Kosonen v. Commissioner, T.C. Memo. 2000-107. Although petitioners claim that they provided an election for 1996 to a revenue agent during the examination and filed their 1997 election with their original return, neither election was produced at trial. For lack of evidence and proof, respondent is sustained with respect to this issue.[4]

Because petitioners did not properly elect to treat the rental properties as a single activity, they cannot group them. Krukowski v. Commissioner, 279 F.3d 547 (7th Cir. 2002), affg. 114 T.C. 566 (2000); Kosonen v. Commissioner, supra. As an additional consequence of the failure to elect, Mrs. Jahina must qualify as a real estate professional with respect to each property separately in order to avoid a determination that the rental activities were per se passive under section 469(c)(2).

---

[4] Even if the election had been made part of the record, its validity would still be in question. Respondent disputes that petitioners filed a proper election with either their 1996 or 1997 original return. To be valid, the election must be filed with the original return. Sec. 1.469-9(g)(3), Income Tax Regs. A taxpayer who aggregated real estate rental activities on his tax returns but who failed to meet the literal requirements of electing combination treatment has been held not to have given clear notice of an intent to elect under sec. 469(c)(7). Kosonen v. Commissioner, T.C. Memo. 2000-107. Moreover, petitioners did not argue substantial compliance with the applicable regulation. Cf. American Air Filter Co. v. Commissioner, 81 T.C. 709, 718-723 (1983).

Thus, to hold in petitioners' favor, the Court must find: (1) That more than one-half of Mrs. Jahina's personal services during the taxable year were performed in each rental property activity in which a loss deduction is claimed, and (2) that Mrs. Jahina performed more than 750 hours of services during the taxable year on each of the claimed properties. Sec. 469(c)(7)(B); sec. 1.469-9(e)(1), Income Tax Regs.

The evidence fails to establish that Mrs. Jahina was a real estate professional with respect to each of the rental properties considered separately.[5] The requirements of section 469(c)(7)(B) were not met with respect to any of the rental properties individually. During all of 1996 and until August 1997, Mrs. Jahina had a full-time job with a standard work requirement of 1,800 hours per year. During the latter months of 1997, she had a part-time job. Even if she performed some of her rental property activities from her wage jobs, double-counting some of her time as she claimed, there were five apartment buildings to be managed. She did not work on any one of these properties more than she worked on her wage jobs. Further, she

---

[5] With respect to that evidence, the Court disregards as not credible the summaries prepared by Mrs. Jahina for purposes of the audit purporting to establish her time spent on the rental property activities. See Mowafi v. Commissioner, T.C. Memo. 2001-111; Bailey v. Commissioner, T.C. Memo. 2001-296 ("petitioner's estimates are uncorroborated and do not reliably reflect the hours that she devoted to her rental real estate activities").

did not satisfy the 750-hour statutory minimum for any one of them. See <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223. Her testimony, phone records, and calendars reflect that she did not spend sufficient time on the individual rental property activities to satisfy either prong of section 469(c)(7)(B).

The Court holds that Mrs. Jahina was not a real estate professional with respect to petitioners' rental properties during the years at issue. Because Mrs. Jahina was not a real estate professional, the rental property activities of petitioners are treated as per se passive. Sec. 469(c)(2), (4). Accordingly, the general disallowance rule concerning passive activity losses applies. Sec. 469(a)(1)(A). Respondent is sustained on this issue.

The final issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1997 in the amount of $5,216.80. Section 6662(a) provides for an accuracy-related penalty equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). "Negligence" consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). "Disregard" consists of any careless, reckless, or intentional disregard. <u>Id.</u>

The courts have refined the Code definition of negligence as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Treasury regulations further stipulate that negligence includes any failure to exercise ordinary and reasonable care in the preparation of a tax return, failure to keep books and records, or failure to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. A return position that has a "reasonable basis" as defined in the regulation is not attributable to negligence. Id.

An exception to the section 6662 penalty applies when the taxpayer demonstrates: (1) There was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c).[6] Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances on a case-by-case basis. See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience,

---

[6] This section may provide relief even if a return position does not satisfy the reasonable basis standard. Sec. 1.6662-3(b)(3), Income Tax Regs.

knowledge and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer is not subject to the addition to tax for negligence where the taxpayer makes honest mistakes in complex matters, but the taxpayer must take reasonable steps to determine the law and to comply with it. Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992). The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Stubblefield v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners demonstrated facts and circumstances that establish their reasonable cause and good faith in this case. Even before being audited, Mrs. Jahina took reasonable measures to determine and comply with the law regarding passive activities and real estate professionals. She was aware of the passive loss provisions and attempted to comply with them. She kept contemporaneous calendars and other business records to establish her time and material participation. See sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). She testified, with detail, on the extent of her involvement with the rental activities and her consistent treatment of them as a going concern. Her recordkeeping efforts and testimony were credible, particularly given the complexity of the passive loss provisions. Cf. sec. 1.6662-3(b), Income Tax Regs. ("'Negligence' includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly").

Further, although the timing of their attempt was incorrect, petitioners attempted to elect combination treatment. Had petitioners effected a valid election, the law would not have required a property-by-property analysis. While the Court makes no express finding on whether petitioners would have prevailed had they made a valid election to combine the properties, the standard would have been significantly less burdensome had they done so. Finally, the record shows that Mrs. Jahina left her wage job in 2000 to devote her full-time efforts to their rental properties. This record indicates reasonable cause and good faith with respect to the underpayment. The Court holds that petitioners did not act negligently with respect to the underpayment and are not liable for the accuracy-related penalty under section 6662(a). See Shaw v. Commissioner, T.C. Memo. 2002-35 (taxpayer, a "sophisticated businessperson", was not liable for section 6662(a) penalty notwithstanding Court's holding that he was not a real estate professional).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent on the deficiencies and for petitioners on the section 6662(a) penalty.