123 T.C. No. 16

UNITED STATES TAX COURT

TONY R. CARLOS AND JUDITH D. CARLOS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5512-03.                    Filed September 20, 2004.

      Ps owned and actively engaged in the conduct of
two S corporations, B and J.  B rented real property BB
from Ps, and J rented real property JJ from Ps.  Ps
grouped the two rentals together to make up a single
passive "activity" for purposes of sec. 469, I.R.C.  B
paid its rent on BB according to its lease with Ps,
resulting in income to Ps.  J did not pay its rent on
JJ under its lease with Ps, resulting in a loss to Ps.
Ps netted the income and loss from the two rentals,
claiming nonpassive net rental income.  R, however,
determined that the income and loss items could not be
netted, that the income from renting BB was nonpassive
and the loss from renting JJ was passive, and that Ps
could not offset the nonpassive BB income with the
passive JJ loss.

      <u>Held</u>:  Sec. 1.469-2(f)(6), Income Tax Regs.,
recharacterizes rental income from the taxpayer's
active business as nonpassive, thereby removing such

income from the calculation of passive loss for a sec.
469, I.R.C. activity, despite the proper grouping of
such income with an item of passive loss against which
such income would otherwise be offset.

Murray H. Falk, for petitioners.

Paul L. Dixon, for respondent.

OPINION

WELLS, Judge:  Respondent determined deficiencies in
petitioners' Federal income taxes for 1999 and 2000 as follows:[1]

| Year | Deficiency |
|------|-----------|
| 1999 | $17,011 |
| 2000 | [1]14,443 |

[1]Although respondent initially determined corresponding
deficiencies of $17,011 and $16,384 for 1999 and 2000,
respectively, the parties have stipulated that the deficiency
determined by respondent for 2000 is $14,443.

The issue to be decided is whether losses from petitioners'
rental activity constitute passive activity losses pursuant to
section 469.[2]

---

[1]Although respondent initially determined sec. 6662(a)
accuracy-related penalties of $3,402.20 for 1999 and $3,276.80
for 2000, respondent concedes that penalties are inapplicable.

[2]All section references are to the Internal Revenue Code, as
amended, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

## Background

The parties have submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

Petitioners are husband and wife. At the time of filing their petition, petitioners resided in Apple Valley, California.

During the years in issue, petitioners owned two commercial real estate properties in Apple Valley, California. One property was located at 22040 Bear Valley Road (Bear Valley Road property), and the other was located at 13685/13663 John Glenn Road (John Glenn Road property). Collectively, the Bear Valley Road property and the John Glenn Road property are referred to as the rental properties. Petitioners also owned all of the stock of two S corporations—-Bear Valley Fabricators & Steel Supply, Inc. (steel company), and J&T's Branding Company, Inc. (restaurant).

During 1999 and 2000, petitioners leased the Bear Valley Road property to the steel company and leased the John Glenn Road property to the restaurant.

The steel company agreed to pay rent of $120,000 per year to petitioners for the Bear Valley Road property. The steel company paid the rent, which, after taxes, depreciation, and bank charges, resulted in net rental income to petitioners for the

Bear Valley Road property of $102,646 in 1999 and $102,045 for 2000.

The restaurant agreed to pay rent of $60,000 per year to petitioners for the John Glenn Road property. The restaurant failed to pay its designated rent in 1999 and 2000, which, after mortgage interest, taxes, depreciation, and amortization incurred by petitioners, resulted in a net loss to petitioners for the John Glenn Road property of $41,706 in 1999 and $40,169 in 2000.

Petitioners grouped the rental properties together to constitute a single "activity". On Schedules E, Supplemental Income and Loss, of their 1999 and 2000 income tax returns, petitioners netted the income from the Bear Valley Road property and the loss from the John Glenn Road property. For 1999, petitioners subtracted the $41,706 net loss on the John Glenn road property from the $102,646 net income on the Bear Valley Road property, resulting in net rental income of $60,940. Similarly, for 2000, petitioners subtracted the $40,169 net loss on the John Glenn Road property from the $102,045 net income on the Bear Valley Road property, resulting in net rental income of $61,876. Petitioners reported the net rental income as not from a passive activity and reported no passive activity loss.

Respondent disallowed petitioners' net losses on the John Glenn Road property under section 469(a) as passive activity losses.

## Discussion

Section 469(a) disallows the passive activity loss of an individual taxpayer.[3]  The Internal Revenue Code defines "passive activity" as an activity involving the conduct of a trade or business in which the taxpayer does not materially participate.[4]

---

[3]SEC. 469.  PASSIVE ACTIVITY LOSSES AND CREDITS LIMITED.

(a) Disallowance.--

(1) In general.--If for any taxable year the taxpayer is described in paragraph (2), neither--

(A) the passive activity loss, nor

(B) the passive activity credit,

for the taxable year shall be allowed.

(2) Persons described.-- The following are described in this paragraph:

(A) any individual, estate, or trust, * * *.

[4]  SEC. 469(c).  Passive Activity Defined.--For purposes of this section--

(1) In general.--The term "passive activity" means any activity--

(A) which involves the conduct of any trade or business, and

(B) in which the taxpayer does not materially participate.

(2) Passive activity includes any rental activity. * * * the term "passive activity" includes any rental activity.

"Passive activity", however, generally includes any rental activity, regardless of material participation.  Sec. 469(c)(2).

Section 469 does not define "activity".  See Schwalbach v. Commissioner, 111 T.C. 215, 223 (1998).  The Secretary, however, has prescribed regulations pursuant to section 469(l) that specify what constitutes an "activity".  Section 1.469-4(c), Income Tax Regs., sets forth rules for grouping tax items together to determine what constitutes a single "activity".  That regulation provides:  "One or more trade or business activities or rental activities may be treated as a single activity if the activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469."  Sec. 1.469-4(c)(1), Income Tax Regs.  Whether activities constitute an "appropriate economic unit" depends on the facts and circumstances.[5]

Respondent concedes that petitioners' grouping of the Bear Valley Road property and the John Glenn Road property is an appropriate economic unit.  The parties, however, dispute the

---

[5]Sec. 1.469-4(c)(2), Income Tax Regs., provides:

(2) Facts and circumstances test.  Except as otherwise provided in this section, whether activities constitute an appropriate economic unit and, therefore, may be treated as a single activity depends upon all the relevant facts and circumstances.  A taxpayer may use any reasonable method of applying the relevant facts and circumstances in grouping activities * * *.

method for computing passive activity loss within the "activity" grouping.

Section 469(d)(1) defines "passive activity loss" as "the amount (if any) by which--(A) the aggregate losses from all passive activities for the taxable year, exceed (B) the aggregate income from all passive activities for such year."  Passive activity loss is computed by first netting items of income and loss within each passive activity and then subtracting aggregate income from all passive activities from aggregate losses.  See id.; sec. 1.469-2T, Temporary Income Tax Regs., 53 Fed. Reg. 5686 (Feb. 25, 1988).

In carrying out the provisions of section 469, section 469(l)(2) authorizes the Secretary to promulgate regulations "which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income)".  While the general rule of section 469(c)(2) characterizes all rental activity as passive, section 1.469-2(f)(6), Income Tax Regs., requires net rental income received by the taxpayer for use of an item of the taxpayer's property in a business in which the taxpayer materially participates to be treated as income not from a passive activity (sometimes referred

to as the self-rental rule or the recharacterization rule),[6] and

provides:

> (f)(6) Property rented to a nonpassive activity.
> An amount of the taxpayer's gross rental activity
> income for the taxable year from an item of property
> equal to the net rental activity income for the year
> from that item of property is treated as not from a
> passive activity if the property--
>
> > (i) Is rented for use in a trade or business
> > activity * * * in which the taxpayer materially
> > participates * * *.[7]

Petitioners concede that they "materially participated" in

the conduct of both the steel company and the restaurant during

1999 and 2000, and they do not contend that section 1.469-

2(f)(6), Income Tax Regs., is either invalid or inapplicable.

Petitioners, however, contend that computation of passive

activity loss requires the netting of income and loss from all

items of rental property grouped within the section 469 passive

activity and that only after such a computation does section

_____

[6]To illustrate the self-rental rule, suppose taxpayer A owns
a property and all outstanding stock of B Corp. A materially
participates in the operations of B Corp., which generates $100
of income and has $50 of operating expenses in year 1. In year
1, A enters a lease agreement with B Corp. requiring B Corp. to
pay $50 of annual rent to A for A's property. B Corp. uses the
property in year 1 as its headquarters. If B Corp. were to pay
its $50 net income to A in the form of salary, A would have $50
of income not from a passive activity. However, because the $50
of net income is paid to A in the form of rent, it is per se
passive income pursuant to sec. 469(c)(2). Sec. 1.469-2(f)(6),
Income Tax Regs., recharacterizes the $50 of net rental income as
not from a passive activity.

[7]As discussed below, sec. 1.469-2(f)(6), Income Tax Regs.,
is authorized by sec. 469(l)(2).

1.469-2(f)(6), Income Tax Regs., apply to recharacterize passive income as nonpassive. Respondent contends that section 1.469-2(f)(6), Income Tax Regs., requires the removal of self-rental income from the passive activity loss computation and that, after income from the Bear Valley Road property is properly removed from the passive activity loss computation, petitioners are left with no passive income to offset against the passive loss on the John Glenn Road property. We conclude that section 469(d) and the legislative regulations of section 1.469-2(f)(6), Income Tax Regs., support respondent's position.

Section 469(l)(2) explicitly authorizes the promulgation of regulations to remove certain items of gross income from the calculation of income or loss from any activity. Section 1.469-2(f)(6), Income Tax Regs., is a legislative regulation and is entitled to appropriate deference from this Court. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). In Chevron, the U.S. Supreme Court stated: "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844. We have previously held that section 1.469-2(f)(6), Income Tax Regs., is not arbitrary, capricious, or manifestly contrary to section 469(l)(2). Krukowski v. Commissioner, 114 T.C. 366 (2000), affd. 279 F.3d 547 (7th Cir. 2002); Shaw v. Commissioner, T.C. Memo. 2002-35; Sidell v.

Commissioner, T.C. Memo. 1999-301, affd. 225 F.3d 103 (1st Cir. 2000).  The Courts of Appeals for the First, Fifth, and Seventh Circuits have also upheld the validity of section 1.469-2(f)(6), Income Tax Regs.  See Krukowski v. Commissioner, 279 F.3d 547 (7th Cir. 2002); Sidell v. Commissioner, 225 F.3d 103 (1st Cir. 2000); Fransen v. United States, 191 F.3d 599 (5th Cir. 1999).

Section 1.469-2(f)(6), Income Tax Regs., explicitly recharacterizes net rental activity income from an "item of property" rather than net income from the entire rental "activity".  Both section 469 and the regulations thereunder clearly distinguish between net income from an "item of property" and net income from the entire "activity",[8] which might include rental income from multiple items of property.[9]  Under the authority of section 469(l)(2), the Secretary could have

_____

[8]Sec. 469(l)(2) authorizes the implementation of regulations to remove "certain items of gross income" from the determination of income from an "activity".  The designation of an "[item] of gross income" to be removed from such a determination is narrower than and distinct from the term "activity" income (from which the item must be removed).  Since sec. 1.469-2(f)(6), Income Tax Regs., designates "net rental activity income for the year from * * * [an] item of property" as the item of gross income to be removed pursuant to sec. 469(l)(2) from the determination of income from the "activity", net rental activity income from an "item" of property is also narrower than and distinct from the broader term "activity" income.

[9]The fact that multiple rentals may be grouped together pursuant to sec. 1.469-4(c), Income Tax Regs., to make up a single "activity" further evidences the distinction between net income from an "item" of property and net income from the entire "activity".

implemented regulations to remove items of gross income equal to net income from the entire activity, but the Secretary instead implemented regulations to recharacterize net income from a specific item of self-rental property. The use of the term "item of property" leads us to conclude that respondent's interpretation of the regulation is correct. Accordingly, in the instant case, self-rental income from the Bear Valley Road property is removed from the passive activity loss computation, leaving no passive income to be offset by the passive loss on the John Glenn Road property.

Section 469(d)(1) defines passive activity loss as the excess of losses from passive activities over income from passive activities. Consequently, recharacterization of "self-rental income" under section 1.469-2(f)(6), Income Tax Regs., as not from a passive activity effectively removes the income from the passive activity loss computation. Removal of a single item of income from such computation does not affect the passive characterization of items remaining within the activity. See Shaw v. Commissioner, supra. "Under the self-rented property rule, the net rental income from self-rented property is treated as nonpassive income and the net rental losses are treated as passive losses, even though the rental activities are passive activities." Id.

Although we have not previously decided whether grouping items of passive income and loss within a single section 469 activity precludes recharacterization under section 1.469-2(f)(6), Income Tax Regs., of income that would otherwise offset the passive loss,[10] we have consistently upheld recharacterization of passive income which would otherwise offset passive loss without considering the effect of the activity grouping. See, e.g., Krukowski v. Commissioner, 114 T.C. 355 (2000); Schwalbach v. Commissioner, 111 T.C. 215, 219-224 (1998); Cal Interiors, Inc. v. Commissioner, T.C. Memo. 2004-99; Shaw v. Commissioner, supra; Sidell v. Commissioner, T.C. Memo. 1999-301; Connor v. Commissioner, T.C. Memo. 1999-185, affd. 218 F.3d 733 (7th Cir. 2000).[11] In each of these cases, we validated

_____

[10]In Krukowski v. Commissioner, 279 F.3d 547, 554 (7th Cir. 2002), affg. 114 T.C. 366 (2000), the taxpayers raised the single activity grouping argument on appeal, but the Court of Appeals did not address the issue because the taxpayers had not elected to treat the rental activities as a single activity on their return. The taxpayers in Shaw v. Commissioner, T.C. Memo. 2002-35, likewise, belatedly tried to raise the issue of single activity grouping but were not allowed to do so.

[11]In Fransen v. United States, 82 AFTR 2d 6621, 98-2 USTC par. 50,776 (E.D. La. 1998), affd. 191 F.3d 599 (5th Cir. 1999), the taxpayers similarly challenged application of sec. 1.469-2(f)(6), Income Tax Regs., in an action for refund. The taxpayers argued that sec. 1.469-2(f)(6), Income Tax Regs., is invalid because it contradicts the statutory designation of rental activity income as passive. The court awarded summary judgment to the Commissioner, holding that sec. 1.469-2(f)(6), Income Tax Regs., is consistent with the express congressional purposes of sec. 469 and the authorizing language of sec.

(continued...)

application of section 1.469-2(f)(6), Income Tax Regs., to recharacterize specific items of income, leaving remaining items of passive loss with no offset.

In the instant case, we conclude that activity grouping does not preempt the application of section 1.469-2(f)(6), Income Tax Regs.  To hold otherwise would undermine the congressional purpose for enacting section 469 and authorizing section 1.469-2(f)(6), Income Tax Regs., to wit:  the prevention of sheltering of nonpassive income with passive losses.  H. Conf. Rept. 99-841 (Vol. II), at II-147 (1986), 1986-3 C.B. (Vol. 4) 1, 147.  The conference report accompanying section 469 describes this legislative purpose:

> Regulatory authority of Treasury in defining non-passive income.--The conferees believe that clarification is desirable regarding the regulatory authority provided to the Treasury with regard to the definition of income that is treated as portfolio income or as otherwise not arising from a passive activity.  The conferees intend that this authority be exercised to protect the underlying purpose of the passive loss provision, i.e., preventing the sheltering of positive income sources through the use of tax losses derived from passive business activities.
>
> Examples where the exercise of such authority may (if the Secretary so determines) be appropriate include the following * * * (2) related party leases or sub-leases, with respect to property used in a business activity, that have the effect of reducing active business income and creating passive income * * *.  [Id.]

---

11(...continued)
469(l)(3).

The facts of the instant case appear to fall within the description of activity that Congress intended to prevent.

Petitioners' interpretation of section 1.469-2(f)(6), Income Tax Regs., would effectively allow a taxpayer to subvert Congress's intent. Petitioners' interpretation would allow a taxpayer to convert nonpassive income into passive income against which passive losses could be offset by manipulating the payment of rent from a business controlled by the taxpayer on property rented from the taxpayer to the controlled business.[12] See Shaw v. Commissioner, T.C. Memo. 2002-35. By converting nonpassive income into passive income in this manner, such a taxpayer would be able to shelter otherwise nonpassive income with passive losses. Petitioners' interpretation would allow petitioners to shelter nonpassive income from the Bear Valley Road property with passive loss from the John Glenn Road property, contrary to congressional intent.[13]

---

[12]Because sec. 1.469-2(f)(6), Income Tax Regs., would apply to recharacterize self-rental income under petitioners' interpretation only to the extent such income exceeds passive losses within the activity grouping, only the excess would be subject to recharacterization. An amount of passive income equal to the amount of passive losses would retain its passive character and, therefore, be sheltered by passive losses within the grouping.

[13]The result in this case might appear harsh, since, as respondent's brief recognizes, had the restaurant paid its rent on the John Glenn Road property, petitioners could have properly offset related expenses against that rental income. However, we must base our decision on the facts of the instant case: the

(continued...)

Accordingly, we hold that net rental income from the Bear Valley Road property constitutes income not from a passive activity.  Net rental loss from the John Glenn Road property, however, retains its characterization as loss from passive activity.  Consequently, the loss is properly disallowed under section 469(a).[14]

To reflect the foregoing,

<u>Decision with respect to the deficiencies will be entered for respondent; decision with respect to the accuracy-related penalties pursuant to section 6662(a) will be entered for petitioners</u>.

---

[13](...continued)
restaurant <u>did not</u> pay its rent for the John Glenn Road property.  Moreover, sec. 469(b) tempers the harshness of disallowing such passive activity losses by allowing them to be carried forward.

[14]Petitioners contend that the issue raised by respondent as to whether loss from the John Glenn Road rental should be disallowed as a passive activity loss constitutes a "new matter", distinct from respondent's original contention, set forth in the statutory notice of deficiency, that net income from the Bear Valley Road rental is recharacterized as nonpassive.  We need not address this issue, however, because we decide only a legal issue, not a factual one, and the burden of proof therefore does not affect our decision.