T.C. Summary Opinion 2007-192


UNITED STATES TAX COURT


GREGORY J. FARRIS, Petitioner <u>v</u>.
COMMISSIONER OF THE INTERNAL REVENUE, Respondent


Docket No. 4631-06S.                    Filed November 13, 2007.


Gregory J. Farris, pro se.

<u>Daniel D. Ryan</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>:  This case for the
redetermination of deficiencies was heard pursuant to the
provisions of section 7463.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court,

_____

    [1]  Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.

and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $13,259, $17,251, and $17,482 in petitioner's Federal income tax for 2000, 2001, and 2002, respectively. The issue for decision for each year is whether petitioner understated his passive activity loss.[2] The resolution of the issue depends upon whether rental income petitioner received from his closely held corporation is properly characterized as passive so as to offset passive losses incurred during the year, as petitioner claims, or whether the rental income is nonpassive, as respondent determined.

## Background

Substantially all of the facts have been stipulated and the stipulated facts are so found. At the time the petition was filed, petitioner resided in Gardiner, Maine.

On or about May 14, 1985, petitioner and Mark E. Susi (Susi), both practicing attorneys, formed Farris & Susi, R.E. (the real estate partnership), for purposes of buying, selling, and renting real estate. In the same year, the real estate partnership acquired property located at 251 Water Street, Gardiner, Maine (the Gardiner property), which consisted of three commercial buildings.

---

[2] The parties apparently agree that no portion of his passive activity loss would be deductible. See sec. 469(a).

Under a lease agreement (the 1985 lease), the real estate partnership rented the Gardiner property to Farris & Susi, a Maine partnership (the law partnership) then consisting of two partners; namely, petitioner and Susi. The law offices of the law partnership were located at the Gardiner property. The 1985 lease remained in effect at least until December 31, 1989.

In early 1987, a flood at the Gardiner property caused a significant disruption to the law partnership's practice and the loss of numerous documents, including, more likely than not, the 1985 lease.

On or about January 1, 1990, the real estate partnership, as the lessor, and the law partnership, as the lessee, entered into a written lease (the 1990 lease) for the Gardiner property. The 1990 lease was signed by petitioner on behalf of the real estate partnership and by Susi on behalf of the law partnership.

At some point afterwards, petitioner and Susi admitted new partners to the law partnership. Towards the end of 1992, petitioner and Susi were practicing law as partners in Farris, Susi, Heselton, & Ladd, P.A. Subsequently, on or about December 30, 1992, Farris, Susi, Heselton, & Ladd, P.A., was incorporated as a Maine corporation (the corporation). The change in legal form and structure of the law practice was prompted in part by malpractice insurance concerns as well as by the addition of new

attorneys. Around the same time, the real estate partnership, as lessor, entered into a new written lease with the corporation, as the lessee, for the Gardiner property (the 1992 lease). In January 2000, Susi sold his partnership interest in the real estate partnership to petitioner. As a result, petitioner became the sole owner of the Gardiner property. Around the same time, petitioner, as lessor, entered into a new lease for the property with the corporation as lessee (the 2000 lease). The corporation later changed its name to Farris, Heselton, Ladd, & Bobrowiecki, P.A.

During 2000, 2001, and 2002, petitioner was the majority shareholder in the corporation, which was the source of all of his income from the practice of law during those years.

On his 2000, 2001, and 2002 Federal income tax returns, petitioner reported net passive income from renting the property to the corporation of $34,839, $46,168, and $48,391, respectively. For each year, the net passive income was entirely offset by passive losses attributable to other real estate that petitioner owned and held for rent during those years.[3]

In the notice of deficiency respondent increased petitioner's income for each year by the appropriate amount of the rental income shown above. According to the explanation in

---

[3] The amounts of passive losses attributable to other properties are not in dispute.

the notice of deficiency, because the "rental income is from a rental to a corporation in which * * * [petitioner] materially [participates], the income from that activity is considered non-passive."  Therefore, according to respondent, the nonpassive rental income, obviously otherwise includable in petitioner's income, cannot be offset by petitioner's passive losses.  Other adjustments made in the notice of deficiency are not in dispute and need not be addressed.

### Discussion

Section 469 generally disallows for the taxable year any passive activity loss.  Sec. 469(a)(1).  The term "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A "passive activity" is "any activity * * * which involves the conduct of any trade or business, and * * * in which the taxpayer does not materially participate."  Sec. 469(c)(1).  The term "passive activity" generally includes any rental activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).

While the general rule of section 469(c)(2) characterizes all rental activity as passive, section 1.469-2(f)(6), Income Tax Regs., requires net rental income received by the taxpayer for use of an item of the taxpayer's property in a business activity

in which the taxpayer materially participates to be treated as income not from a passive activity; this is sometimes referred to as the "self-rental rule" or the "recharacterization rule".  Sec. 469(c)(2); sec. 1.469-2(f)(6)(i), Income Tax Regs.  In relevant part, that regulation provides as follows:

> (f)(6) <u>Property rented to a nonpassive activity</u>. An amount of the taxpayer's gross rental activity income for the taxable year from an item of property equal to the net rental activity income for the year from that item of property is treated as not from a passive activity if the property—
>
> (i) Is rented for use in a trade or business activity * * * in which the taxpayer materially participates (within the meaning of § 1.469-5T) * * * for the taxable year.

Simply put, the regulation recharacterizes a taxpayer's rental income from property rented for use in a trade or business in which the taxpayer materially participates as nonpassive income and therefore not taken into account in the computation of the taxpayer's passive activity loss.

A transition rule, however, allows for an exception to the recharacterization rule.  The transition rule provides that:

> In applying * * * [the recharacterization rule] to a taxpayer's rental of an item of property, the taxpayer's net rental activity income * * * from the property for any taxable year beginning after December 31, 1987, does not include the portion of the income (if any) that is attributable to the rental of that item of property pursuant to a written binding contract entered into before February 19, 1988.  [Sec. 1.469-11(c)(1)(ii), Income Tax Regs.]

Petitioner concedes that he "materially participated" in the conduct of the corporation during 2000, 2001, and 2002. Furthermore, he acknowledges the application and validity of section 1.469-2(f)(6), Income Tax Regs.[4]  He takes the position, however, that he is entitled to relief from the consequences of the recharacterization rule by virtue of the transitional rule referenced above.

As petitioner views the matter, the 2000 lease, which was in effect during the years in issue,[5] was merely a continuation of the 1985 lease, which obviously predated February 19, 1988. According to petitioner, the changes in the entities that were parties to the lease over the years should not defeat the application of the transitional rule.

---

[4]  We have on numerous occasions applied sec. 1.469-2(f)(6), Income Tax Regs., to recharacterize specific items of income, leaving remaining items of passive loss with no offset.  See, e.g., Carlos v. Commissioner, 123 T.C. 275 (2004); Krukowski v. Commissioner, 114 T.C. 366 (2000), affd. 279 F.3d 547 (7th Cir. 2002); Schwalbach v. Commissioner, 111 T.C. 215, 219-224 (1998); Cal Interiors, Inc. v. Commissioner, T.C. Memo. 2004-99, affd. sub nom. Beecher v. Commissioner, 481 F.3d 717 (9th Cir. 2007); Sidell v. Commissioner, T.C. Memo. 1999-301, affd. 225 F.3d 103 (1st Cir. 2000); Connor v. Commissioner, T.C. Memo. 1999-185, affd. 218 F.3d 733 (7th Cir. 2000).

[5]  We ignore the portion of 2000 for which the 1992 lease might have been in effect as it would make no difference to our analysis and conclusion.

Respondent, relying upon the recharacterization rule, maintains that the rental income petitioner received from the real estate partnership in 2000, 2001, and 2002 from the corporation is nonpassive. According to respondent, the transitional rule does not apply because the 2000 lease is not merely a continuation of the 1985 lease but the last in a series of four different leases.

The 1985 lease was between the real estate partnership and the law partnership. At the time, petitioner and Susi were the only partners of both the law partnership and the real estate partnership. The parties to the 1990 lease were the same as the parties to the 1985 lease, and, according to petitioner, the terms and conditions of those two leases were the same. The 1992 lease differed from the prior two if only because it involved a lessor and a lessee not involved with the 1985 lease; namely a partnership and a corporation, neither of which was in existence in 1985. Things changed once again in the 2000 lease. This time the parties to the lease were petitioner, as the lessor, and the corporation, as the lessee.

The corporation, one party to the 1992 and 2000 leases, did not exist before December 30, 1992. As petitioner views the matter, the corporation should be treated as a continuation of the law partnership. Petitioner's view is not only contrary to a fundamental principle of Federal income taxation but contrary to

Maine law as well.  See <u>Moline Props., Inc. v. Commissioner</u>, 319 U.S. 436 (1943) (holding that for Federal income tax purposes, a corporation and its shareholders are separate entities); see also <u>LaBelle v. Crepeau</u>, 593 A.2d 653, 655 (Me. 1991) (likewise holding that under Maine law, a corporation and its shareholders are separate entities).

The 2000 lease cannot be considered merely a continuation of the 1985 lease if only because the parties to those two lease are not the same.  Consequently, the rental income petitioner received in accordance with the 2000 lease cannot be considered to be from a written binding contract entered into before February 19, 1988.  It follows that the transitional rule set forth in section 1.469-11(c)(1)(ii), Income Tax Regs., is not applicable.  It also follows that the recharacterization rule provided in section 1.469-2(f)(6), Income Tax Regs., requires that the rental income petitioner received from the corporation cannot be treated as passive income with the meaning of section 469.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.