T.C. Memo. 2014-138

UNITED STATES TAX COURT

DOUGLAS D. SCHUMANN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14608-12.                    Filed July 14, 2014.

<u>Tyler B. Korn</u>, for petitioner.

<u>Joel D. McMahan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined deficiencies and a penalty

with respect to petitioner's Federal income tax returns as follows:

|  [*2]<br>Year | Deficiency | Penalty<br>sec. 6662(a) |
|---|---|---|
| 2008 | $19,730 | --- |
| 2009 | [1]718,725 | $143,745 |

[1]The deficiency amount for 2009 is the amount in the notice of deficiency. Respondent filed a first amendment to answer which asserts additional Schedule E income of $2,964,412 ($1,482,206 increase to petitioner's 2009 nonpassive income and an erroneous offset of $1,482,206).  A Rule 155 computation will be required to determine the correct deficiency amount for 2009.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the tax years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

The issues for consideration are (1) whether petitioner qualifies as a real estate professional who materially participated in a real estate trade or business for either tax year 2008 or 2009; (2) whether the rental income petitioner received for use of his properties in Maine and Connecticut is nonpassive income under the self-rental rules of section 469; (3) whether petitioner's rental real estate losses for 2009 are limited by section 280A; and (4) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for tax year 2009.

[*3]                           FINDINGS OF FACT

Some of the facts are stipulated and are so found.  Petitioner resided in Florida when he filed the petition.  Petitioner graduated from college with a degree in mechanical engineering.

Petitioner's Businesses

Petitioner has incorporated four companies:  P-Q Controls, Inc. (P-Q Controls), P-Q Controls Maine, Inc. (P-Q Controls Maine), N R S Associates, Inc. (N R S Associates), and Exec-Jet, Inc., d.b.a. DDS Proprietary, Inc. (Exec-Jet).

P-Q Controls is an S corporation with a principal place of business in Connecticut.  P-Q Controls manufactures electronic controls for construction and mobile equipment.  In 2008 and 2009 petitioner was the president and majority shareholder of P-Q Controls.  In 2008 petitioner was one of four directors of P-Q Controls and his three adult children were the remaining directors.  In 2009 petitioner was the sole director of P-Q Controls.

P-Q Controls Maine is an S corporation with a principal place of business in Maine.  P-Q Controls Maine provides manufacturing services to P-Q Controls.  Petitioner was the president, majority shareholder, and sole director of P-Q Controls Maine in 2008 and 2009.

[*4]  N R S Associates is a Florida corporation.  N R S Associates licensed technology to P-Q Controls during 2008.  N R S Associates did not have any operations in 2009.  Petitioner was the sole shareholder of N R S Associates in 2008 and 2009.

Exec-Jet is an S corporation.  During 2008 and 2009 petitioner was a licensed pilot, and in 2009 he owned an aircraft.  Petitioner originally formed Exec-Jet to hold ownership of his aircraft.  During 2008 and 2009 Exec-Jet had no employees.  Exec-Jet does not own an interest in P-Q Controls.  In 2009 P-Q Controls paid petitioner approximately $2.3 million on behalf of Exec-Jet.

Petitioner's Real Estate Holdings

During 2008 and 2009 petitioner owned two commercial rental properties, one in Connecticut (Connecticut property) and one in Maine (Maine property).  In 2008 and 2009 petitioner rented the Connecticut property to P-Q Controls and the Maine property to P-Q Controls Maine.

In 2008 and 2009 petitioner also owned an airplane hangar in Florida.

During 2008 and 2009 petitioner owned 12 residential properties in Florida: Gordon #1, Gordon #2, Cutlass #1, Gin #1, Cutlass #2, Kings Town, Gin #2, Treasure, Fort Charles, Green Dolphin #1, Green Dolphin #2, and Green Dolphin #3 (collectively, Florida properties).  All 12 residential properties are within a mile

[*5] of petitioner's home in Florida. Petitioner purchased six of the properties in 2008 and two of the properties in 2009. Petitioner did not rent out any of the properties in 2008, and he was able to rent out only the Green Dolphin #3 property in 2009. Petitioner did not sell any of the properties during 2008 and 2009. Petitioner permitted his friends to use the properties occasionally while they were on vacation.

Petitioner owns two apartments on a cruise ship known as the World. The World is a privately owned luxury yacht that travels around the world. He purchased the first apartment in 2006 and the second apartment in 2009. He used one of his two apartments as his residence while aboard the World. Petitioner spent at least 92 days in 2008 and 162 days in 2009 aboard the World. Petitioner deducted the annual maintenance costs associated with these apartments on Schedules E, Supplemental Income and Loss, of his income tax returns. Petitioner reported no rental income from these apartments on his 2008 or 2009 income tax return.

Petitioner did not keep a contemporaneous log detailing his real estate activities during 2008 or 2009.

[*6] Third-Party Assistance With the Florida Properties

During 2008 and 2009 petitioner hired a number of individuals and companies to assist him with the maintenance of his Florida properties.

Petitioner hired the Forrest Co. Realty of Naples, Inc. (Forrest Co.), Downing & Frye, Prudential Realty, and AAdvisors Realty to market the Florida properties. The Forrest Co. placed signs on some of petitioner's properties and helped him attempt to lease his properties.

Petitioner employed Thomas Frei and Michael Nichols to manage the renovation and repair of the Florida properties. Mr. Frei worked for petitioner from August 2008 to February 2009. He repaired and painted petitioner's properties, solicited contractors for work estimates, hired contractors to perform work, and paid contractors for their services. Mr. Nichols replaced Mr. Frei in February 2009 and assumed similar duties and responsibilities. Mr. Nichols received a weekly salary.

Petitioner also hired landscapers, interior decorators, pest control companies, air conditioning companies, and alarm companies to perform work on the Florida properties.

**[*7]** Petitioner's Tax Returns

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for tax year 2008. He reported $5,375,000 of wages from P-Q Controls and $10,000 of wages from P-Q Controls Maine. Petitioner also reported $103,583 in management fees from a subcontracting business on a Schedule C, Profit or Loss From Business. Petitioner attached a Schedule E to his 2008 Form 1040. On his Schedule E petitioner reported $21,643 and $729,959 of nonpassive income from P-Q Controls Maine and P-Q Controls, respectively. He also reported $629,994 of rental income from P-Q Controls for the Connecticut property and $75,000 of rental income from P-Q Controls Maine for the Maine property. Petitioner also reported $652,576 of royalties from N R S Associates. A certified public accountant prepared petitioner's 2008 tax return.

Petitioner submitted a Form 1040X, Amended U.S. Individual Income Tax Return, for tax year 2008. On the amended return petitioner reported the same wages and business income but made changes to his Schedule E. Petitioner added eight of the Florida properties (Cutlass #2, Green Dolphin #1, Fort Charles, Gin #2, Gin #1, Kings Town, Treasure, and Cutlass #1) and his apartment aboard the World to his Schedule E. Petitioner reported zero rental income with respect to the eight Florida properties and his apartment aboard the World, but he reported

**[\*8]** expenses with respect to those properties. Petitioner reported $843,770 of expenses for the Florida properties, which included insurance, mortgage interest, taxes, utilities, management fees, ground care, pest control, pool care, and depreciation. Petitioner's reported expenses for his apartment aboard the <u>World</u> included $239,328 of maintenance fees and $1,925,000 of depreciation. Petitioner also attached a document entitled "Rental Real Estate Professional Election", in which he stated that he was a "qualified real estate professional under Code Sec. 469(c)(7)" and wished to "elect under Code Sec. 469(c)(7)(A) to treat all interests in real estate as a single rental real estate activity". His amended 2008 tax return was prepared by a tax return preparer different from the one who had prepared his original return.

Petitioner filed a Form 1040 for tax year 2009. Petitioner reported $856,989 of wages from P-Q Controls and $10,000 of wages from P-Q Controls Maine. Petitioner also reported $260,000 in management fees from Exec-Jet on a Schedule C. Petitioner attached a Schedule E to his 2009 Form 1040. On his Schedule E petitioner reported $371,525 and $2,272,768 of nonpassive income from P-Q Controls Maine and Exec-Jet, respectively, and $659,223 of nonpassive loss from P-Q Controls. He also reported $1,200,000 of rental income from P-Q

[*9] Controls for the Connecticut property and $300,000 of rental income from

P-Q Controls Maine for the Maine property.

Petitioner listed all 12 of his residential properties in Florida, his apartments

aboard the World, and his airplane hangar on his Schedule E. Petitioner reported

only $31,000 of rental income from the Green Dolphin #3 property and $3,600 of

rental income from his airplane hangar. Petitioner reported $2,836,860 of

expenses for the Florida properties, which included cleaning and maintenance,

commissions, legal fees, insurance, mortgage interest, repairs, supplies, utilities,

ground care, pest control, pool care, security, permits, inspections, and

depreciation. Petitioner's reported expenses for his apartments aboard the World

included $354 of legal fees, $400,755 of maintenance fees, and $315,000 of

depreciation. Petitioner also attached a document entitled "Rental Real Estate

Professional Election" which is identical to the one he attached to his amended

2008 tax return. His 2009 tax return was prepared by the tax return preparer who

had prepared his amended 2008 tax return.

Notice of Deficiency

On March 15, 2012, respondent issued petitioner a notice of deficiency. For

tax year 2008 respondent determined that petitioner was not entitled to the refund

that he claimed on his amended 2008 tax return because he did not qualify as a

[*10] real estate professional.[1]  For tax year 2009 respondent disallowed a deduction for $1,869,095 of reported rental real estate losses because of section 469 passive loss limitations.  Respondent also determined that petitioner is liable for an accuracy-related penalty under section 6662(a) for tax year 2009.

Pleadings

On June 8, 2012, petitioner filed timely the petition.[2]  On July 24, 2012, respondent filed an answer.  On July 31, 2013, respondent filed an amended answer which asserts that petitioner improperly reported the rental payments that he received from P-Q Controls and P-Q Controls Maine in both 2008 and 2009 as passive rental income.  Respondent asserts that the rental income is nonpassive income under the self-rental rules of section 469 and that petitioner cannot offset this income with his passive losses.

On October 22, 2013, respondent filed a second amended answer.  In the second amended answer respondent asserts that petitioner's rental real estate losses for 2009 are limited by section 280A.

---

[1]Respondent did not accept petitioner's amended 2008 tax return and based his adjustments on petitioner's 2008 Form 1040.

[2]The petition states only that petitioner disagrees with respondent's "determination that he does not meet the requirements to be a real estate professional."  The petition does not specify whether petitioner's disagreement pertains to both 2008 and 2009.

**[*11]**                                        OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer likewise bears the burden of proving his or her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Petitioner bears the burden of proving that he is entitled to deduct the passive activity losses that he reported for 2008 and 2009. Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

The Commissioner bears the burden of proof for any new matters or increases in deficiency asserted in the answer. Rule 142(a); Turner v. Commissioner, 68 T.C. 48, 50 (1977). Respondent did not raise the section 280A limitation until the second amendment to answer. Respondent did not raise the self-rental rules of section 469 until the first amendment to answer. Therefore, respondent bears the burden of proof for both issues. However, we decide these issues by the preponderance of the evidence rather than by reference to the placement of the burden of proof.

[*12] I.     Section 469

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212.  However, if the taxpayer is an individual, section 469 generally disallows any passive activity loss for the taxable year and treats it as a deduction or credit for the next taxable year.  Sec. 469(a) and (b).  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial.  Sec. 469(h)(1).  Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2).

A.     Real Estate Professional

Section 469(c)(7) provides an exception to the rule that a rental activity is per se passive.  The rental activities of a taxpayer in a real property trade or business (a real estate professional) are not subject to the per se rule of section 469(c)(2).  Sec. 469(c)(7)(A); see Kosonen v. Commissioner, T.C. Memo. 2000-107, slip op. at 9; sec. 1.469-9(b)(6), (c)(1), Income Tax Regs.  Rather, the rental

[*13] activities of a real estate professional are subject to the material participation requirements of section 469(c)(1).  See sec. 1.469-9(e)(1), Income Tax Regs.  A taxpayer qualifies as a real estate professional if:  (1) more than one-half of the personal services performed in trades and businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.  Sec. 469(c)(7)(B)(i) and (ii).

      1.     Election

For the purposes of determining whether a taxpayer is a real estate professional, a taxpayer's material participation is considered separately with respect to each rental property, unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity.  Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs.  A taxpayer makes the election by "filing a statement with the taxpayer's original income tax return for the taxable year."  Sec. 1.469-9(g)(3), Income Tax Regs.  The statement must contain a declaration that the taxpayer is a qualifying taxpayer for the taxable year and is making the election pursuant to section 469(c)(7)(A).  Id.

**[*14]**         a.     <u>2008</u>

Petitioner did not file a statement with his original 2008 tax return electing to treat all of his interests in rental real estate as a single rental real estate activity. Although petitioner did include a statement making the election with his amended 2008 tax return, the election is ineffective because the statement must accompany the original return. See <u>Shiekh v. Commissioner</u>, T.C. Memo. 2010-126, slip op. at 11; <u>Trask v. Commissioner</u>, T.C. Memo. 2010-78, slip op. at 11-12; <u>see also</u> sec. 1.469-9(g)(3), Income Tax Regs. The notice of deficiency is based upon the original return. Accordingly, for tax year 2008 we will treat each of petitioner's properties separately in order to determine whether he materially participated in the particular rental activity.

          b.     <u>2009</u>

Petitioner filed a statement with his 2009 tax return electing to treat all of his interests in rental real estate as a single rental real estate activity. The statement stated that petitioner was a "qualified real estate professional under Code Sec. 469(c)(7)" and wished to "elect under Code Sec. 469(c)(7)(A) to treat all interests in real estate as a single rental real estate activity." For tax year 2009 we will treat petitioner's properties as a single rental real estate activity.

**[*15]**     2.     Material Participation Tests

A taxpayer is considered to have materially participated in an activity if one of the seven tests listed in the regulations is satisfied.  Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).  Four tests, set forth in paragraph (a)(1), (2), (3), and (7), are most relevant here:

> (1) The individual participates in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;
>
> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;
>
> *     *     *     *     *     *     *
>
> (7) Based on all of the facts and circumstances * * *, the individual participates in the activity on a regular, continuous, and substantial basis during such year.

A taxpayer may establish hours of participation by any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  Contemporaneous daily reports are not required if the taxpayer can establish participation by other reasonable means.  Id.  Reasonable means includes

[*16] "appointment books, calendars, or narrative summaries" that identify the services performed and "the approximate number of hours spent performing such services". Id. We have noted previously that we are not required to accept a postevent "ballpark guesstimate" or the unverified, undocumented testimony of taxpayers. See, e.g., Moss v. Commissioner, 135 T.C. 365, 369 (2010); Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

Petitioner testified that he spent over 1,000 hours in both 2008 and 2009 doing various tasks connected with his properties. He further testified that he worked five to six hours per day, six days a week when he was in Florida and worked remotely (exchanged messages with Mr. Nichols) two hours per day when aboard the World. Mr. Nichols testified that he witnessed petitioner working on the properties approximately three to four hours per day, three to four days per week when petitioner was in town and that he exchanged emails with petitioner. However, petitioner did not produce any of the emails that he exchanged with Mr. Nichols. We decline to accept petitioner's and Mr. Nichols' testimony without adequate documentary support.

Petitioner did not keep a contemporaneous log or an appointment calendar tracking his real estate activities, but he prepared a narrative summary of his

**[*17]** activities. The summary, however, provides a broad description of the work performed at each property rather than a detailed description of the work that petitioner performed personally. The summary does not differentiate between hours that petitioner worked in 2008 and hours that he worked in 2009. The summary also seems to include hours worked in 2010.

Petitioner contends that the narrative summary is based on the documents that he introduced into evidence. Petitioner introduced a document labeled "daily log" for each tax year that provides the number of hours that he worked during each day in 2008 and 2009. These documents were prepared during examination. The "daily log" contains contradictions. For instance, petitioner indicates in the log that on certain dates (November 4 and November 23, 2008; January 28 to February 3, 2009; and June 8, October 13 to 14, and November 30 to December 3, 2009) he was in Florida inspecting his properties, but at trial he testified that he was aboard the World on those dates. In the log petitioner indicates that Mr. Frei carried out daily inspections and participated in a daily telecommunications meeting with petitioner in June 2008 and March and April 2009. Mr. Frei, however, testified that he worked for petitioner from August 2008 to February 2009. We believe that the methods that petitioner used to approximate the time that he spent performing services during 2008 and 2009 are not reasonable within

**[*18]** the meaning of section 1.469-5T(f)(4), Temporary Income Tax Regs., supra. Petitioner's estimates are uncorroborated and do not reliably reflect the hours that he spent on his rental real estate activities. See Bailey v. Commissioner, T.C. Memo. 2001-296, slip op. at 13.

Petitioner also introduced bank records, copies of checks, and receipts. These bank statements, checks, and receipts provide no information regarding how many hours petitioner spent working on a given day on his properties. Furthermore, petitioner admitted at trial that he did not personally make all of the purchases represented by the receipts and did not personally write all of the checks. Petitioner testified that he gave his credit card to Mr. Nichols so Mr. Nichols could make most of the purchases from Home Depot.

Petitioner testified that Deborah Houseman, an employee of P-Q Controls, retained possession of his P-Q Controls checkbook and a signature stamp with his name. He testified that Ms. Houseman paid many bills on his behalf. Mr. Frei testified that he typically received checks from Ms. Houseman to pay expenses relating to petitioner's properties. Mr. Nichols testified that he often paid expenses relating to petitioner's real estate properties out of pocket. He further testified that he sent an invoice for the expenses to Ms. Houseman and that Ms.

[*19] Houseman would send him a check with petitioner's signature added by stamp to reimburse him for the expenses.

To the extent that petitioner based his narrative summary on the bank records, copies of checks, and receipts, the narrative summary would be a postevent "ballpark guesstimate", and we are not bound to accept his summary as proof that he materially participated in his rental activities.

Petitioner does not satisfy the first material participation test for tax year 2008 because he did not prove that he spent more than 500 hours working on any of his properties in 2008. He likewise did not satisfy the first material participation test for tax year 2009 because he did not prove that he spent more than 500 hours working on all of his properties combined in 2009. We find that petitioner did not meet his burden of showing that he participated in any of his rental activities for more than 500 hours for either 2008 or 2009.

Petitioner does not satisfy the second material participation test because various employees and independent contractors worked on each of his properties for unknown amounts of time. Without quantification of the work performed by these third parties, we cannot determine whether petitioner's participation constitutes "substantially all of the participation" with respect to any particular property. See Shiekh v. Commissioner, slip op. at 14 (stating that the taxpayer did

**[*20]** not satisfy "substantially all" test where tenants were "responsible for the maintenance of that property").

Petitioner does not satisfy the third material participation test because he did not show that his participation in each rental activity was not less than the participation of any other individual. Once again, petitioner did not provide us with any quantification of the work performed by the many third parties that worked on his properties. The evidence suggests that Mr. Frei and Mr. Nichols worked more hours than petitioner. Mr. Frei testified that he typically worked as a property manager for 40 hours per week on petitioner's properties in 2008. Mr. Nichols testified that he typically worked 40, 50, or even 55 hours per week on petitioner's properties in 2009. Mr. Nichols testified that he witnessed petitioner working on the properties approximately three to four hours per day, three to four days per week when petitioner was in town and that he exchanged emails with petitioner. If we were to accept Mr. Nichols' testimony, petitioner would have worked at most 16 hours per week on his properties. Even if we assume that petitioner worked 6 hours per day, six days per week when he was in Florida as he contends, his 36 hours per week would be fewer than Mr. Frei's hours in 2008 and Mr. Nichols' hours in 2009.

[*21]  Finally, we cannot conclude that petitioner participated in his rental activities "on a regular, continuous, and substantial basis".  See sec. 1.469-5T(a)(7), Temporary Income Tax Regs., supra.  Petitioner spent time on his rental activities, but we cannot overemphasize the importance of keeping thorough, contemporaneous time records rather than making estimates after the fact.  In addition, petitioner's use of several rental agencies to help find prospective tenants, show his properties, and market his properties suggests that he did not materially participate in the rental of his properties.  See Bailey v. Commissioner, slip op. at 19-20; Barniskis v. Commissioner, T.C. Memo. 1999-258; Chapin v. Commissioner, T.C. Memo. 1996-56.

We conclude that petitioner has not met his burden of proving that he materially participated in any real estate activity during 2008 and 2009.  Since petitioner did not materially participate in any real estate activity during 2008 and 2009, he does not satisfy either requirement of section 469(c)(7)(B).  Petitioner does not qualify as a real estate professional for either 2008 or 2009.  Petitioner's loss deductions with respect to the Florida properties are disallowed for tax years 2008 and 2009 pursuant to section 469.

**[\*22] B.    Self-Rental Rules**

Respondent contends that petitioner's net rental income from the Connecticut property and the Maine property is nonpassive income under the self-rental rules of section 1.469-2(f)(6), Income Tax Regs.  Income from rental activity is generally treated as per se passive income.  See sec. 469(c)(2).  Under the self-rental rules net rental income is reclassified as nonpassive income if the taxpayer receives the rental income for use of an item of his or her property in a business in which he or she materially participates.  Sec. 1.469-2(f)(6), Income Tax Regs.; see also Veriha v. Commissioner, 139 T.C. 45, 48-49 (2012).  Rental income that is reclassified as nonpassive cannot be offset by passive losses.  See Carlos v. Commissioner, 123 T.C. 275 (2004).

Petitioner owned the Connecticut property and the Maine property.  In 2008 and 2009 he rented the Connecticut property and the Maine property to P-Q Controls and P-Q Controls Maine for use in their respective businesses.  He reported net rental income from both properties for 2008 and 2009.  The self-rental rules apply to this net rental income if petitioner materially participated in the businesses of P-Q Controls and P-Q Controls Maine during 2008 and 2009.

Material participation in a business is tested in the same way as material participation in a rental activity.  Sec. 1.469-5T(a), Temporary Income Tax Regs.,

[*23] supra.  We focus on whether, on the basis of all the facts and circumstances, petitioner participated in the businesses of P-Q Controls and P-Q Controls Maine on a regular, continuous, and substantial basis during 2008 and 2009.  See sec. 1.469-5T(a)(7), Temporary Income Tax Regs., supra.

Petitioner's tax reporting suggests that he was an active participant in both businesses in 2008 and 2009.  For 2008 petitioner reported $5,375,000 of wages from P-Q Controls and $10,000 of wages from P-Q Controls Maine.  On his Schedule E he reported $21,643 and $729,959 of nonpassive income from P-Q Controls Maine and P-Q Controls, respectively.  For 2009 petitioner reported $856,989 of wages from P-Q Controls and $10,000 of wages from P-Q Controls Maine.  On his Schedule E he reported $371,525 of nonpassive income from P-Q Controls Maine and $659,223 of nonpassive loss from P-Q Controls.

Petitioner testified that his income tax reporting for both years was "tax provisioning" and that he did not actively provide services to either company in exchange for the wages and payments reported on his tax returns.  However, petitioner testified that he reviewed the monthly financial statements of his companies with Bart Guthrie.  He further testified that he would communicate with Mr. Guthrie weekly or biweekly about his companies.  Petitioner acknowledged that he was the majority shareholder, president, and a director of both P-Q Controls

[*24] and P-Q Controls Maine during the years in issue, and he testified that he was financially responsible for his companies.

On June 1, 2011, petitioner's three adult children, all minority shareholders of P-Q Controls, commenced a shareholder's derivative lawsuit against petitioner in the U.S. District Court for the District of Connecticut. Among other things, petitioner's children alleged that petitioner did minimal work for P-Q Controls during 2008. Petitioner denied that he did minimal work for P-Q Controls during 2008. On April 23, 2012, petitioner was deposed in connection with the shareholder's derivative lawsuit. Petitioner admitted that he was responsible for ensuring that P-Q Controls had enough resources to invest capital in new projects. Petitioner also admitted that he was involved actively in sales calls during 2008 and 2009. Petitioner also stated that as of the date of the deposition, he was still with P-Q Controls "creating and inventing" and continued to be "a participant in the overall strategy and growth of the business."

We conclude that petitioner participated in the businesses of P-Q Controls and P-Q Controls Maine on a regular, continuous, and substantial basis. As a consequence, petitioner's net rental income is nonpassive and cannot be offset by any passive activity losses that he incurred with respect to any other properties. See Dirico v. Commissioner, 139 T.C. 396, 404 (2012).

[*25]  II.     Section 280A

Respondent contends that the deductions that petitioner claimed for tax year 2009 with respect to his apartments aboard the World are limited by section 280A. Section 280A(a) provides that "no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." See also Langley v. Commissioner, T.C. Memo. 2013-22, at *5. A dwelling unit is a residence if the taxpayer uses the dwelling for personal purposes for a number of days equal to the greater of 14 days or 10% of the number of days during the year for which the unit is rented at a fair rental value. Sec. 280A(d)(1); see also Langley v. Commissioner, at *5. Personal purposes include personal use by the taxpayer and personal use by any other individual unless that individual is renting the dwelling for fair rental value. Sec. 280A(d)(2).

Petitioner owns two apartments aboard the World. He used one of his two apartments as his residence while aboard the World. He spent at least 162 days in 2009 aboard the World. Petitioner testified that he offered his second apartment aboard the World as a live auction item to help raise money for charities. He further testified that his donations led to auction bidders' using his second apartment aboard the World for 15 to 26 weeks. Petitioner did not provide any

[*26] evidence that either apartment was rented at fair rental value in 2009. Because both of petitioner's apartments were used for personal purposes for at least 14 days in 2009, both apartments are treated as residences for 2009. We find that the deductions that petitioner claimed for 2009 with respect to his apartments aboard the World are limited by section 280A.

III.    Accuracy-Related Penalty

Respondent contends that petitioner is liable for an accuracy-related penalty under section 6662(a) for tax year 2009. Section 6662(a) provides a penalty for an underpayment attributable to negligence or disregard of rules or regulations within the meaning of section 6662(b)(1).

The Commissioner bears the burden of production regarding the taxpayer's liability for any penalty. Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner has met this burden, the taxpayer must provide persuasive evidence that the Commissioner's determination was incorrect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, to exercise due care, or to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax

**[*27]** Regs. Negligence also includes any failure by a taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Respondent has demonstrated that petitioner failed to keep accurate records with respect to his participation in his rental activities, the participation of third parties in his rental activities, and his participation in the businesses of his companies. Respondent has shown that petitioner acted negligently with respect to 2009.

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). For purposes of section 6664(c) a taxpayer may be able to establish reasonable cause and good faith by showing reliance on professional advice. Sec. 1.6664-4(b)(1), Income Tax Regs. To establish good faith and reasonable cause through reliance on professional advice, the taxpayer must show that (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

**[\*28]** Petitioner's original 2008 tax return was prepared by a certified public accountant. He testified that after his 2008 tax return was filed, he decided to have a second tax return preparer reassess the tax return because he had concerns about the tax return. He testified that the second preparer informed him that the original tax return had many omissions. Petitioner hired the second tax preparer to draft an amended 2008 tax return. After reviewing the amended return, petitioner decided to file the amended 2008 tax return. This preparer also prepared petitioner's 2009 tax return. Petitioner did not call either of his tax return preparers to testify. Petitioner did not keep books and records adequate to substantiate his status as a real estate professional. We think petitioner acted without reasonable cause and did not act in good faith. We hold that petitioner is liable for a section 6662(a) penalty for negligence for 2009.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

under Rule 155.